UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero

| | | |
|---|---|---|
| IN RE : MARK S. MILLER<br>JAMILEH MILLER<br><br>DEBTORS | )<br>)<br>)<br>)<br>)<br>) | Chapter 13<br>Case No. 10-25453 |
| MARK S. MILLER<br>JAMILEH MILLER<br><br>Plaintiffs,<br>v.<br><br>DEUTSCHE BANK NATIONAL<br>TRUST COMPANY, ARONOWITZ &<br>MECKLENBURG, LLP,<br>CITIMORTGAGE, INC. AND<br>ONEWEST BANK FSB<br><br>Defendants, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Adversary Case No.<br>10-01757-MER |

**CITIMORTGAGE, INC.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED ADVERSARY COMPLAINT**

Defendant CitiMortgage, Inc. (**CitiMortgage**) respectfully submits its motion to dismiss plaintiffs Mark S. Miller and Jamileh Miller's (**plaintiffs**) first amended adversary complaint (**FAAC**) pursuant to Fed. R. Civ. P. 12(b)(6), as made applicable to adversary proceedings by virtue of Fed. R. Bankr. P. 7012.

### I. INTRODUCTION

Like plaintiffs' original adversary complaint (and their new state court complaint), the FAAC is a compilation of legal conclusions that is devoid of any factual underpinnings. The crux of the FAAC, upon which every identifiable claim rests, are the contentions that Deutsche Bank National Trust Company (**Deutsche Bank**) is

{DN086697;2} 1

fraudulently claiming an interest in the first lien on plaintiffs' property, CitiMortgage is fraudulently claiming an interest in the second lien on their property, and Deutsche Bank and CitiMortgage conspired to commit or perpetuate an array of fraudulent acts related to servicing and enforcing the respective liens. Plaintiffs, however, not only fail to allege the purported fraud with sufficient particularity, they offer nothing to support any claim against CitiMortgage for which relief can be granted.

Plaintiffs do not deny executing the original loan documents, or defaulting on their loan payment obligations. Nor do they allege any *facts* to plausibly suggest CitiMortgage was not the lawful loan servicer or assignee of the second lien. Indeed, judicially-noticeable documents conclusively demonstrate otherwise, and further establish that CitiMortgage had nothing to do with Deutsche Bank's foreclosure efforts or motion for relief from the bankruptcy stay. Plaintiffs either misunderstand Colorado's laws pertaining to negotiable instruments and foreclosure, or are intentionally acting to harass CitiMortgage with the frivolous complaints now pending in state and federal court.

## II.   RELEVANT FACTS

On or about April 20, 2006, plaintiffs obtained a $216,236.00 loan (**First Loan**) and a $54,060.00 loan (**Second Loan**). (Request for Judicial Notice (**RJN**), Exs. 1-2). The First Loan and Second Loan (collectively **Loans**) were secured by property located at 19733 E. Union Dr., Centennial, CO 80015 (**Property**). (RJN Exs. 3-4.) IndyMac Bank, F.S.B. (**IndyMac**) was the originating lender for the Loans. (*Id*.) CitiMortgage began servicing the Second Loan shortly after it was originated in 2006, and was subsequently assigned the Second Loan in November 2010. (FAAC Ex. A; RJN Ex. 5.)

Plaintiffs began having trouble making their loan payments, and defaulted on the Second Loan in June 2009. (FAAC Ex. E.) CitiMortgage did not, however, elect to foreclose on the Second Loan. On February 18, 2010, Deutsche Bank filed its "Notice Of Election And Demand For Sale" on the First Loan. (RJN Ex. 6.) CitiMortgage's name does not appear on that document. (*Id*.) On March 22, 2010, Deutsche Bank initiated a C.R.C.P. 120 proceeding against plaintiffs by filing a motion for an order authorizing sale. (RJN Ex. 7.) CitiMortgage is not a named party in that document, and did not join in the motion. (*Id*.) Deutsche Bank's motion was granted on May 6, 2010. (RJN Ex. 8.)

Plaintiffs then filed for Chapter 13 Bankruptcy on June 22, 2010, identifying CitiMortgage as a creditor in Schedule D of their petition, with a $51,209.00 claim based upon the Second Loan. (Bankr. Case No. 10-25453-MER, Doc. No. 2 at 33.) On October 10, 2010, by and through its attorneys, Aronowitz & Mecklenburg, LLP, Deutsche Bank moved for relief from the automatic stay to pursue its state remedies under the First Loan. (Bankr. Case No. 10-25453-MER, Doc. No. 64.) CitiMortgage did not join in that motion. (*Id*.) Before responding to Deutsche Bank's motion on October 26, 2010, plaintiffs initiated this adversary proceeding on October 18, 2010. (*Id*. at Doc. Nos. 71, 79.) On November 3, 2010, the Court held a hearing on the motion and issued an order granting Deutsche Bank the right to foreclose on and/or take possession of the Property. (*Id*. at Doc. Nos. 84-85). Absent from the Court's order is any reference to CitiMortgage. (*Id*.) Plaintiffs appealed the order granting Deutsche Bank relief from the stay to the United States Bankruptcy Appellate Panel of the Tenth Circuit, which recently affirmed. (*See* BAP Appeal No. 10-73 at Doc. No. 53.)

On March 28, 2011, this Court entered an order regarding the hearing on defendants' motions to dismiss plaintiffs' original adversary complaint that was scheduled for May 3, 2011. (Bankr. Case No. 10-01757-MER Doc. No. 30.) The order, in part, directed the parties to be prepared to discuss the status of any pending state or federal court proceedings related to the adversary proceeding, and invited the parties to submit a status report on or before April 27, 2011. Plaintiffs did not file a status report, and further failed to inform the Court at the May 3, 2011 hearing that they had initiated a state court action, against the same defendants named in their original adversary complaint, in Arapahoe County District Court on April 28, 2011. (RJN Ex. 9.)

At the May 3, 2011 hearing, the Court granted plaintiffs an opportunity to amend their complaint to try and allege some factual bases for their claims against CitiMortgage. Instead of identifying the factual bases for their claims, plaintiffs added new claims for purported Racketeer Influenced Corrupt Organizations Act (**RICO**) and Fair Debt Collection Practices Act (**FDCPA**) violations, and extreme and outrageous conduct. (FAAC pp. at 6:24-28, 8:3-24.) The state court complaint and FAAC include claims for fraud, civil conspiracy, and extreme and outrageous conduct, but each also includes distinct claims and drastically divergent damage amounts. (*Compare* FAAC (alleging RICO and FDCPA violations and seeking $10.9 million in damages) *and* RJN Ex. 9 (alleging quiet title by adverse possession and seeking $13.8 million in damages).)

### III. LEGAL STANDARDS

A.  RULE 12(b)(6)

In ruling on a motion to dismiss, the Court must accept well-pleaded allegations as true and must construe them in the light most favorable to the plaintiffs. *See Fisher v.*

*Un. Feature Syndicate, Inc.*, 37 F. Supp. 2d 1213, 1215 (D. Colo. 1999), *aff'd,* 203 F.3d 834 (10th Cir. 2000). However, the court need not accept as true mere "conclusory" allegations. *See Coburn v. Nordeen*, 72 Fed. Appx. 744, 746 (10th Cir. 2003). Rather, "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007); *Bonanno v. The Quizno's Franchise Co. LLC*, No. 06-cv-02358-WYD-KLM, 2008 WL 638367, at *2 (D. Colo. March 5, 2008) (noting *Twombly's* heightened pleading requirement).

The Supreme Court reaffirmed *Twombly's* higher pleading requirements in light of a pre-answer motion to dismiss, finding a complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation" to survive dismissal. *Ashcroft v. Iqbal*, __U.S. __, 129 S.Ct. 1937, 1949 (2009). "[N]aked assertions devoid of further factual enhancement" no longer suffice to state a claim. *Id.* (internal quotation marks omitted). The Court further affirmed that a formulaic recitation of claim elements, because of its conclusory nature, is not entitled to the presumption of truth. *Id.* at 1951.

Despite being obligated to construe *pro se* pleadings liberally, the Court "cannot be a *pro se* litigant's advocate." *See Dillard-Crowe v. Aurora Loan Services, LLC*, Nos. 07-cv-01987-WDM-CBS, 07-cv-02293-WDM-CBS, 2008 WL 3201226, at *5 (D. Colo. Aug. 5, 2008). The Court must not assume the plaintiff can prove facts he has not alleged, or that the defendant has violated laws in ways not alleged. *See Assoc. Gen. Contractors v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983); *Walker v. Bd. of Trs.*, 76 F. Supp. 2d 1105, 1108 (D. Colo. 1999) (same). Nor can the Court "supply additional factual allegations to round out a plaintiff's complaint" or "construct arguments or theories for the plaintiff in the absence of any discussion of those issues."

*Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991). Before *Twombly*, a complaint may have withstood a motion to dismiss "if it left open the possibility that a fact not alleged in the complaint could render the complaint sufficient." *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). But now, a complaint must contain enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974.

### B. The Incorporation By Reference Doctrine

The Court must take as true only the well-pleaded factual allegations of plaintiffs' complaint. That group of factual allegations includes the documents referenced in or attached to the complaint. "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Moreover, courts need not assume the truthfulness of any unsupported allegations that are flatly contradicted by documents attached to or referenced in the complaint. *See GFF Corp.*, 130 F.3d at 1385 (10th Cir. 1997) ("Mere legal conclusions and factual allegations that contradict such a properly considered document are not well-pleaded facts that the court must accept as true.").

### IV. ARGUMENT

### A. Plaintiffs' FAAC Supersedes Their Initial Complaint

Plaintiffs repeatedly and improperly attempt to incorporate each and every paragraph of their initial adversary complaint into their FAAC in violation of Rules 8, 9,

10, and 15, the effect of which is a "shotgun pleading" that is anything but a short and plain statement. (FAAC pp. 1:20-22, 4:4, 5:4, 6:4, 7:4 and 8:2); *see* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1326 (1990) (discussing adoption by reference under Rule 10 and "shotgun pleadings").

This Court granted plaintiffs leave to amend, not supplement, their adversary complaint. (Bankr. Case No. 10-01757-MER Doc. No. 34.) An amended complaint ordinarily supersedes a prior complaint and renders it of no legal effect. *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991). "[P]ursuant to Rule 10(c), specific allegations of the prior complaint may be referenced or incorporated by the amended complaint, *but only if* reference to allegations in the prior complaint is direct and specific." *Fullerton v. Maynard*, 943 F.2d 57, 1991 WL 166400, at *2 (10th Cir. 1991) (amended complaint superseded original complaint where a *pro se* plaintiff mentioned and referred generally to the original complaint, but failed to make any "explicit and direct reference to specific allegations of the original complaint") (emphasis added). Rule 10(c) must be read in conjunction with 10(b) and Rule 8(a). Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading."); Fed. R. Civ. P. 8(a)(2) ("a short and plain statement of the claim showing that the pleader is entitled to relief").

Here, neither plaintiffs' FAAC nor its original complaint complies with Rules 8, 9 or 10, and any attempt to incorporate the entire original complaint into the FAAC (no less than six times) is not only improper in itself, it would further violate those rules, run afoul of Rule 15, and render the FAAC incomprehensible. As such, plaintiffs failed to properly

incorporate any specific statements from the original complaint, and should be limited to only those allegations in the FAAC.

### B. Plaintiffs' Fraud Claims are Deficiently Pled and Legally Unsupportable

At the core of plaintiffs' FAAC is the claim that CitiMortgage committed fraud by representing it was the loan servicer and assignee of the Second Loan when it "is not and never was a party to any loan transaction with plaintiff and [Indymac Bank]." (*See* FAAC 4:21-22, 5:20-21; FAAC Exs. A-J.) Virtually every other claim in the FAAC appears to derive from this one erroneous premise. (*See generally* FAAC.) Like plaintiffs' original complaint, the fraud claims in the FAAC do not meet minimum pleading standards under Rule 9(b). Not only does the FAAC rest entirely upon conclusory allegations of wrongdoing that are devoid of any factual support, plaintiffs' allegations of fraud are contradicted by judicially-noticeable documents.

To establish fraud, a plaintiff must prove that: (1) a misrepresentation of material fact was made by the defendant; (2) at the time the representation was made, the defendant knew the representation was false or was aware that he did not know whether the representation was true or false; (3) the plaintiff relied on the misrepresentation; (4) the plaintiff had the right to rely on, or was justified in relying on, the misrepresentation; and (5) the reliance resulted in damages. *See Barfield v. Hall Realty, Inc.*, 232 P.3d 286, 290 (Colo. App. 2010). Moreover, a complaint alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1237 (10th Cir. 2000) (cited authority omitted).

Here, plaintiffs do not allege any facts, let alone any facts with the requisite specificity under Rule 9(b), that plausibly suggest CitiMortgage was not the loan servicer or assignee of the Second Loan. Instead, plaintiffs' naked assertions of wrongdoing are contradicted by judicially-noticeable documents. *First*, plaintiff identified CitiMortgage as a creditor in Schedule D of their bankruptcy petition with a $51,209.00 claim based upon the Second Loan. *Second*, all of the monthly account statements, related correspondence, and handwritten notations therein that plaintiffs attached to the FAAC suggest CitiMortgage was, in fact, the loan servicer. (FAAC Exs. A-J.) *Third*, there is nothing in the note, which is endorsed in blank, the recorded Assignment of Mortgage, or plaintiffs' FAAC that would suggest that either the note or assignment is anything but proper. (RJN Exs. 2, 5.) Plaintiffs' FAAC is the exact type of pleading that is no longer sufficient under *Twombly* and *Iqbal*.

Plaintiffs do not deny executing the note for the Second Loan, or the deed of trust securing it. (RJN Exs. 2, 4.) In executing the deed of trust, plaintiffs expressly agreed that MERS was the nominee beneficiary for IndyMac, its successors and assigns. As the nominee beneficiary under the deed of trust, MERS had the authority to exercise all of the rights under the note and deed of trust. As such, MERS had the power to execute an assignment of the Second Loan to CitiMortgage. *See In re Smith*, 366 B.R. 149, 151-52 (Bankr. D. Colo. 2007) *re Roberts*, 367 B.R. 677, 682-83 (Bankr. D. Colo. 2007).

Moreover, the note for the Second Loan is a negotiable instrument governed by Article 3 of the Uniform Commercial Code, C.R.S. §§ 4-3-101, *et seq*. *See Haberl v. Bigelow*, 855 P.2d 1368, 1373 (Colo. 1993). The indorsement of the note in blank made it payable to bearer, and CitiMortgage's subsequent possession of the note unquestionably

establishes its enforcement rights as a holder. *See* C.R.C. §§ 4-3-109, 205; *Columbus Investments v. Lewis*, 48 P.3d 1222, 1226 (Colo. 2002) ("The transfer or assignment of a negotiable promissory note carries with it, as an incident, the deed of trust or mortgage upon real estate or chattels that secure its payment."); *see also In re Smith*, 366 B.R. at 151-52; *In re Roberts*, 367 B.R. at 682-83. Notwithstanding plaintiffs' conclusory allegations of fraud, the Second Loan is a valid lien that CitiMortgage may enforce pursuant to Colorado law and the express terms of the deed of trust.

As plaintiffs' fraud claims fail as a matter of law, so too do their claims for alleged FDCPA and RICO violations, theft, money laundering, unjust enrichment, and extreme and outrageous conduct, as all of these conclusory claims are expressly premised upon plaintiffs' baseless assertion that CitiMortgage had no lawful interest in the Second Loan.

### C.   There was No Civil Conspiracy as a Matter of Law

As is evident from the FAAC, plaintiffs' conspiracy theory fails because they cannot plead any facts that plausibly support a claim for civil conspiracy. Under Colorado law, five elements are required to establish a civil conspiracy claim: "(1) two or more persons, and for this purpose corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Walker v. Van Laningham*, 148 P.3d 391, 396 (Colo. App. 2006).

Plaintiffs fail to alleged any facts to satisfy the second or fourth elements, namely that CitiMortgage had an agreement or meeting of the minds with any other defendant, to accomplish an unlawful goal or a lawful goal by unlawful means. *See Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995) ("[C]ourts will not infer the agreement necessary to form

a conspiracy; evidence of such an agreement must be presented by the plaintiff. Additionally, the purpose of the conspiracy must involve an unlawful act or unlawful means. A party may not be held liable for doing in a proper manner that which it had a lawful right to do." (internal citations omitted)).

Again, all plaintiffs offer are bare legal conclusions, which are insufficient to survive a motion to dismiss. (*See* FAAC at 4:7-20, 5:5-8.) Moreover, judicially-noticeable documents contradict plaintiffs' conclusory allegations and demonstrate CitiMortgage has a lawful interest in the Second Loan, and neither attempted to foreclose on plaintiffs' Property nor moved for relief from the bankruptcy stay. Despite the fact that plaintiffs cannot allege any facts to support a civil conspiracy claim against CitiMortgage, there is simply nothing unlawful about a person or entity resorting to the state or federal courts of Colorado to seek a legal determination of competing rights; and there is nothing on the face of the documents relating to the First Loan, the foreclosure action, or the bankruptcy motion that would suggest fraud.

In what appears to be a desperate attempt to find liability where none exists, plaintiffs suggest "if no conspiracy is found," then CitiMortgage "independently committed" every wrongful act plaintiffs allege. (*See* FAAC at p. 8:21-24.) Given plaintiffs' claims relating to the First Loan, this allegation is absurd, frivolous, and indicative of their continued bad faith in naming CitiMortgage as a defendant.

### D. CitiMortgage is Not a Debt Collector

As previously discussed, plaintiffs' FDCPA claim fails because it is expressly premised upon a fraud claim that cannot survive dismissal. *See supra*, Sections B & C. Plaintiffs' FDCPA claim further fails for the independent reason that they have not and

cannot allege facts demonstrating CitiMortgage is a "debt collector" as that term is defined under the FDCPA.  Indeed, judicially-noticeable documents establish CitiMortgage began servicing the Second Loan in 2006, and plaintiffs defaulted on their payment obligations relating to that loan in 2009. (*See* FAAC Exs. A, E.)

The FDCPA regulates collection activity by debt collectors, not creditors.  *See Thomas v. Law Firm of Simpson & Cyback*, 392 F.3d 914, 916-917 (7th Cir. 2004).  "To be held liable for violation of the FDCPA, a defendant must—as a threshold requirement—fall within the Act's definition of a debt collector." *Heintz v. Jenkins*, 541 U.S. 291, 294 (1995).  The definition of "debt collector" **does not** include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … concerns a debt which was **not in default** at the time it was obtained by such person…." 15 U.S.C. § 1692a(6)(F)(iii) (emphasis added).

In *Perry v. Stewart Title Co.*, 756 F.2d 1197 (1985), the Fifth Circuit determined the "legislative history of Section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default when assigned." *Perry*, 756 F.2d at 1208 (analyzing 15 U.S.C. § 1692a(6)(F)(iii)).  That holding has been frequently followed by the courts in this district.  *See Lyons v. WM Specialty Mortg. LLC*, No. 09-cv-00018-WYD-BNB, 2008 WL 2811810, at *7 (D. Colo. July 18, 2008) (citing 15 U.S.C. § 1692a(6)(F)(iii) & *Perry*); *Smith v. Argent Mortg. Co., LLC*, No. 05-CV-02364-REB-BNB, 2007 WL 2484296, at *5 (D. Colo. June 27, 2007) (citing same).

Here, plaintiffs have not alleged and cannot allege facts demonstrating their loan was in default when CitiMortgage obtained it for servicing.  CitiMortgage began

servicing the Second Loan shortly after it was originated in 2006, and plaintiffs did not default until 2009.  (*See* FAAC Exs. A, E.)  Plaintiffs' FDCPA claim thus fails.

### E. Plaintiffs' RICO Claims Fails

Plaintiffs purport to claim violations of the Racketeer Influenced and Corrupt Organizations Act (**RICO**), §§ 18 U.S.C. § 1961, *et seq*.  (*See* FAAC at p. 6:27-29.)  Specifically, plaintiffs simply conclude that CitiMortgage violated subsections 1962(a), (b), (c), and (d). (*Id*.)   However, plaintiffs' RICO claims fail because their fraud and conspiracy claims are conclusory and baseless.  *See supra*, Sections B & C.  Similarly, plaintiffs have not properly alleged any facts to meet the requisite elements with sufficient particularity.  To survive "a Rule 12(b)(6) motion, a RICO claim must allege (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Lewis v. BNC Mortg., Inc.*, 342 B.R. 384, 2006 WL 1308352, at *10 (10th Cir. BAP May 4, 2006); *see Cayman Exp. Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir 1989).  The 10th Circuit has further found that "Rule 9(b) is applicable to RICO predicate acts based on fraud."  *Cayman Exp. Corp.*, 873 F.2d at 1362 (finding complaint did not allege the predicate mail fraud acts with sufficient particularity in order to survive dismissal); *see Stinson v. Maynard*, 341 Fed. Appx. 413, 2009 WL 2450435, at *2 (10th Cir. Aug. 12, 2009).  As such, to avoid dismissal plaintiffs must allege "with particularity each element of a RICO violation and its predicate acts of racketeering" so as to give "clear notice of the factual basis of the predicate acts."  *Lewis*, 2006 WL 1308352, at *10. This requires the party to plead "with particularity" "assertions of time, place, and contents of false representations … [and] the identity of the person making the representation and what was obtained or given up thereby."  *Id.*

Here, plaintiffs fail to plead their RICO claims with the specificity required by the Tenth Circuit. Critically, plaintiffs fail to set forth any *facts* suggesting fraudulent conduct on the part of CitiMortgage. *See Schroder v. Volcker*, 864 F.2d 97, 98 (10th Cir. 1988). As demonstrated above, CitiMortgage was the lawful servicer and assignee of the Second Loan. Similarly, plaintiffs offer nothing more than conclusory allegations to suggest a conspiracy or enterprise. *See U.S. v. Hutchinson,* 573 F.3d 1011, 1021-22 (10th Cir. 2009) (plaintiff must show an association-in-fact with three features to establish an enterprise under RICO: purpose, relationships among those associated with the enterprise, and longevity). The FAAC also fails to establish a pattern of continuing racketeering activity. *See Pagel v. Wash. Mut. Bank, Inc*., 153 Fed. Appx. 498, 502, 2005 WL 2865181, at *3 (10th Cir. 2005) ("In this circuit, it is well established that a single scheme to accomplish one discrete goal, directed at a finite group of individuals, with no potential to extend to other persons or entities, rarely will suffice to establish a threat of continuing racketeering activity."). Thus, plaintiffs' RICO claims fail.

### F. Plaintiffs Cannot Allege Any Extreme and Outrageous Conduct

Plaintiffs have not alleged any facts to support a claim against CitiMortgage for intentional infliction of emotional distress or extreme and outrageous conduct, as they cannot rely on their fraud or conspiracy claims as the bases for this claim. *See supra*, Sections B & C. Again, all plaintiffs allege is a list of bare legal conclusions. (FAAC at p. 8:3-24.)

"Intentional infliction of emotional distress/outrageous conduct requires proof that the defendant engaged in extreme and outrageous conduct, recklessly or with the intent of causing the plaintiff severe emotional distress, and that the plaintiff incurred severe

emotional distress as a result of defendant's conduct." *McKelvy v. Liberty Mut. Ins. Co.*, 983 P.2d 42, 44 (Colo. App. 1998) (citation omitted).

Plaintiffs have not alleged any facts demonstrating intent, causation, or any conduct by CitiMortgage that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Coors Brewing Co. v. Floyd* 978 P.2d 663, 665-666 (Colo. 1999) (citation omitted). It is not tortious for a mortgage loan servicer to send routine monthly account statements, or notices upon default. *Cf. Sierra-Bay Fed. Land Bank Ass'n v. Superior Court*, 227 Cal.App.3d 318, 334 (1991) ("It is simply not tortious for a commercial lender to lend money, take collateral, or to foreclose on collateral when a debt is not paid."); *Yu v. Signet Bank*, 69 Cal. App. 4th 1377, 1398 (1999) (a bank's assertion of legal rights in pursuit of its economic interests is not outrageous conduct).

To the extent plaintiffs' emotional distress claim is premised on the Property foreclose, judicially-noticeable documents demonstrate CitiMortgage was not involved in any aspect of the foreclosure process. Moreover, plaintiffs do not dispute they are in default on the Loans. As such, foreclosure is not only a foreseeable risk, it is a secured party's contractual and statutory right. Although the prospect of foreclosure is an unwelcome event for those facing it, any resulting emotional distress is solely a function of plaintiffs' undisputed failure to fulfill their payment obligations.

## V.   CONCLUSION

Plaintiffs' complaint fails to allege any facts to support any cause of action as against CitiMortgage. CitiMortgage thus respectfully requests the Court grant its motion to dismiss, with prejudice.

Dated this 1st day of June, 2011.

                                        Respectfully submitted,

                                        *s/ Kevin R. Dehring*
                                        Justin D. Balser, Reg. No. 34365
                                        Kevin R. Dehring, Reg. No. 36343
                                        **AKERMAN SENTERFITT LLP**
                                        The Kittredge Building
                                        511 Sixteenth Street, Suite 420
                                        Denver, Colorado 80202
                                        (303) 260-7712 Telephone
                                        (303) 260-7714 Facsimile
                                        Email: justin.balser@akerman.com
                                        Email: kevin.dehring@akerman.com

                                        *Attorneys for Defendant*
                                        *CitiMortgage, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2011, I electronically filed the foregoing **CitiMortgage, Inc.'s Motion to Dismiss Plaintiffs' First Amended Adversary Complaint** with the Clerk of Court using the CM/ECF system and served the following party via overnight delivery:

> Mark S. Miller
> Jamileh Miller
> 19733 E. Union Drive
> Centennial, CO 80015
> *Pro Se Plaintiffs*

>> *s/ Debby Esler*
>> Debby Esler